UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA          :
                                  :        **MEMORANDUM**
v.                                :        **OPINION AND ORDER**
                                  :
JAMES WILLIAMS,                   :        20 CR 662 (VB)
                   Defendant.     :
------------------------------------------------------------x

Briccetti, J.:

On February 7, 2022, a jury convicted defendant James Williams of participating in a conspiracy to distribute and possess with intent to distribute more than 28 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B), 846 (Count One); and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, that conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two).

Now pending is defendant's motion for a judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. (Doc. #64).

For the following reasons, the motion is DENIED.

Defendant contends the trial evidence was insufficient as a matter of law to support the jury's verdict on both counts. The Court disagrees.

Viewing the evidence in its totality and in the light most favorable to the government, and drawing all reasonable inferences in the government's favor, United States v. Coté, 544 F.3d 88, 98 (2d Cir. 2008), there was more than enough evidence for a rational jury to find beyond a reasonable doubt that defendant committed each of the crimes of which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Rule 29(c) does not permit the trial court "to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999).

1

Applying these standards here, the jury could reasonably have found the following facts: Defendant was a crack dealer—he told his girlfriend Ajah Hodges that he sold marijuana and crack, and she saw him bagging crack for resale.  On May 25, 2018, he was arrested in possession of a distribution quantity (6.9 grams) of crack.  He also stashed drugs in his apartment—shortly after his arrest, another girlfriend, Blessing Rogers, retrieved bags of white powder that had been secreted in the drain of his kitchen sink and gave them to a third girlfriend (Sammy).  Moreover, prior to his arrest, defendant gave a bag to Hodges to store in her house (the Brooklyn Nets bag), which, knowing defendant was a drug dealer, Hodges reasonably assumed contained drugs.

After his May 25 arrest, defendant made a series of telephone calls from the Orange County Jail, which were recorded.  He told Sammy the "heavy shit" was at Hodges's house, which the jury could reasonably have inferred was a reference to the drugs and guns in the Nets bag.  On May 27, defendant told Hodges to take the bag back to where she got it—his friend Lee's auto repair shop—and to do so "ASAP" so it would not be seized by the police, who had already searched defendant's apartment.  Hodges agreed to do so and ending up placing the bag in the trunk of her car, which was at the shop for repairs.

Later that day, Blessing Rogers told defendant the bag was in Hodges's car at the shop. Two days later, defendant told Rogers to take the bag out of Hodges's car and give it to Lee to hold for him.  She agreed to do so.  But after Rogers retrieved the bag, which defendant said contained a black jacket, defendant told her to take it home and store it in her attic.  Defendant also told Rogers he needed the bag and black jacket for "when I come out of the gym.  I gotta get back in shape.  You know what I'm saying? . . .  Nobody gets that, man.  I need my gym outfit,

man."  From this, the jury could reasonably have inferred defendant wanted the contents of the bag kept safe so he could resume his drug trafficking activities once he got out of jail.

Rogers agreed to take the Nets bag back to her apartment.  Before she did so, she looked in the bag—which she described as "heavy"—and pulled a plastic bag containing crack cocaine from a black jacket, and also discovered a loose bullet in the bottom of the bag.  She then started to drive home.  A few minutes later, the police pulled Rogers over.  They searched the Nets bag and found two handguns (a .38-caliber revolver and a .40-calibre semi-automatic handgun) rolled up inside the black jacket, as well as a plastic bag containing 42 grams of crack in a jacket pocket.  They also found several .38-caliber bullets in the bag.

This evidence was sufficient to support the jury's verdict on both counts.

First, the jury could rationally have concluded that Ajah Hodges, who had seen defendant package crack cocaine for sale, agreed with defendant to store the drugs in the Nets bag at her home.  After defendant had been locked up, she also agreed to deliver the bag and its contents to Lee at the repair shop as quickly as possible, so as to prevent law enforcement from seizing the drugs, and also to enable defendant to sell the drugs when he got out of prison.  This constitutes a conspiracy both to possess with intent to distribute and to distribute the drugs, which defendant knowingly and intentionally joined.  Moreover, the bag contained 42 grams of crack cocaine, which was sufficient to satisfy the drug type and quantity necessary to violate 21 U.S.C. § 841(b)(1)(B).

Likewise, the jury could rationally have concluded Blessing Rogers was part of the same conspiracy.  She too knew defendant was a drug dealer—having retrieved the bags of white powder from the sink drain—and she agreed to take the Nets bag out of Hodges's car and give it to Lee.  She then agreed to move the bag to her home for safekeeping so that defendant could

resume his drug trafficking activities after getting out of prison.  And Rogers saw with her own eyes what was in the bag—crack cocaine and ammunition—before it was seized by the police while en route to her home.

All of these co-conspirators—defendant, Hodges, and Rogers—understood the purpose for which they agreed to possess and did possess the drugs; namely, to facilitate defendant's distribution of the drugs once out of prison.  In short, the evidence was sufficient for the jury to conclude that defendant conspired with one or more of Hodges and Rogers (and others) to distribute and possess with intent to distribute 28 grams and more of crack cocaine.

As to the Section 924(c) count—charging that defendant used and carried a firearm during and in relation to, and possessed a firearm in furtherance of, the drug conspiracy—the evidence was likewise sufficient for a rational jury to convict.

Defendant gave the drugs and guns—wrapped together in his jacket—to Ajah Hodges to store in her house for him.  Then, he had her move the drugs and guns together to Lee's shop "ASAP" to keep them from being seized by the police.  Later, he directed Blessing Rogers to hide them together in her home, so that when he got out of jail he could resume selling drugs.  It was not a coincidence that the guns were stored together with the drugs.  The jury could rationally have concluded they were stored together because defendant needed everything in the Nets bag—not just the drugs but also the guns (and the ammunition for one of those guns)—to resume his drug trafficking and to protect and defend himself while doing so.  Or, to use defendant's words, to "get back in shape."  In that sense, the guns and drugs were inextricably intertwined.  Moreover, the jury could have rejected any innocent inference, such as, for example, that defendant did possess the guns, but for a reason other than to facilitate or further his drug trafficking activities.

In short, this evidence established a "nexus" or direct connection between defendant's possession of the guns and his participation in a conspiracy to distribute and possess with intent to distribute crack cocaine.  In other words, the evidence showed that defendant actively employed and possessed a firearm in order to promote the commission of the crime.  At a minimum, this evidence was sufficient to prove beyond a reasonable doubt that defendant used and carried a firearm during and in relation to, and possessed a firearm in furtherance of, the drug trafficking crime charged in Count One.

Accordingly, defendant's motion for a judgment of acquittal is DENIED.

Dated:  April 27, 2022
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge