UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | | |
|---|---|---|
| JAMES WILLIAMS, Petitioner, | : | |
| v. | : | **OPINION AND ORDER** |
| UNITED STATES OF AMERICA, Respondent. | : | 20 CR 662 (VB) 25 CV 9365 (VB) |

-----------------------------------------------------------x

Briccetti, J.:

Petitioner James Williams, proceeding pro se, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Doc. #87).[1] Liberally construed, Williams claims his counsel was constitutionally ineffective for:

1. Failing to argue the confidential informant planted the seized drugs and guns in order to obtain sentencing consideration;

2. Failing to present evidence that the Middletown Police Department and the government withheld from the Court information regarding the confidential informant's involvement;

3. Failing to utilize exculpatory evidence in government exhibits 329 and 329T;

4. Failing to renew his Rule 29 motion after closing argument;

5. Failing to object to improperly admitted evidence of Williams's prior drug-related activity;

6. Failing to challenge the sufficiency of the evidence as to the Section 924(c) charge;

[1] Citations to "Doc. #__" herein are references to documents filed on the ECF docket for case no. 20-cr-662 (VB).

7. Incompetently cross-examining a witness and failing to object when the Court rephrased counsel's questions to that witness;

8. Allowing the government to constructively amend the indictment;

9. Failing to introduce evidence Williams possessed the drugs for personal use and thus lacked the intent to distribute them;

10. Failing to challenge weak evidence with respect to the drug trafficking charge;

11. Failing to object to the jury instruction as to the Section 924(c) charge; and

12. Failing to object to the Court's limiting instruction regarding the evidence of Williams's prior drug-related activity.

For the following reasons, the motion is DENIED, and the petition is DISMISSED.

**BACKGROUND**

Williams was a crack dealer—he told his girlfriend Ajah Hodges that he sold marijuana and crack, and she saw him bagging crack for resale. On May 25, 2018, Williams was arrested in possession of a distribution quantity of crack. At the time of his arrest, Williams had drugs and guns stashed in a Brooklyn Nets gym bag at Hodges's apartment. Williams also had drugs stashed in the drain of the kitchen sink in his own apartment.

After his May 25 arrest, Williams made a series of telephone calls from the Orange County Jail, which were recorded. Through these phone calls, Williams directed another girlfriend, Blessing Rogers, to remove the drugs stashed in the drain of his kitchen sink, and to give those drugs to a third girlfriend, Samantha Contreras. Williams also directed Hodges to take the Brookyln Nets bag back to where she got it—his friend Lee's auto repair shop—and to do it ASAP. Hodges agreed to do so and ended up placing the Brooklyn Nets bag in the trunk of her car, which was already at the shop for repairs.

On May 30, Williams directed Rogers to take the Brooklyn Nets bag out of Hodges's car and give it to Lee to hold for him. Rogers agreed to do so. But after Rogers retrieved the bag, which Williams said contained a black jacket, Williams told her to take it home and store it in her attic. Williams also told Rogers he needed the bag and black jacket for "when I come out of the gym. I gotta get back in shape. You know what I'm saying? . . . Nobody gets that, man. I need my gym outfit, man." (Doc. #77 at 2–3). Rogers took the Brooklyn Nets bag from Hodges's car and placed it in the front passenger seat of her vehicle.

A few minutes later, the police pulled Rogers over. They searched the Brooklyn Nets bag and found two handguns rolled up inside a black jacket, as well as a plastic bag containing 42 grams of crack. They also found several bullets in the bag.

On December 9, 2020, Williams was charged with participating in a conspiracy to distribute and possess with intent to distribute more than 28 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 (Count One); and using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, that conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two).

Williams proceeded to trial on both counts. Williams was represented by Theodore S. Green, Esq., who had been appointed pursuant to the Criminal Justice Act. At the close of the government's case, defense counsel moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. The motion was denied.

On February 7, 2022, a jury convicted Williams on both counts. After trial, Williams's counsel renewed his motion for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. (Doc. #64). The Court denied the renewed motion in a memorandum opinion and order dated April 27, 2022. (Doc. #77).

Williams appealed, challenging the sufficiency of the evidence on both counts, as well as the Court's denial of his pretrial motion to suppress evidence obtained as a result of the police's search of the Brooklyn Nets bag. On January 31, 2024, the Second Circuit affirmed this Court's judgment by summary order. United States v. Williams, 2024 WL 358134 (2d Cir. Jan. 31, 2024).[2] The Supreme Court denied Williams's petition for a writ of certiorari on October 15, 2024.

On November 7, 2025, Williams filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. #87). Williams claimed he had originally filed the motion on January 1, 2025—which was the signature date on the motion—but that it "never reached its appointed destination." (Doc. #87 at ECF 15).[3] Accordingly, the Court directed Williams to show cause why the motion should not be denied as time-barred. (Doc. #88).

In response, Williams submitted a sworn declaration explaining he had mistakenly mailed the motion to the address of the United States Attorney's Office rather than the address of the Clerk of Court. (Doc. #90). In light of this declaration, the Court determined the motion should not be summarily dismissed and ordered the government to respond to the motion. (Doc. #91).

The government agreed Williams's motion should not be denied as time-barred, but it otherwise opposed the motion.[4] (Doc. #92). Williams thereafter filed his reply, in which he

---

2 Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

3 "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

4 The Court also agrees Williams's motion should not be denied as time-barred. Although the time for Williams to file a timely Section 2255 motion expired on October 16, 2025—one year after the Supreme Court denied his petition for a writ of certiorari—and this Court did not receive the motion until November 7, 2025, the government has confirmed that it received Williams's misdirected motion in January 2025. (Doc. #92 at 8–9).

raised several new arguments related to defense counsel's alleged ineffectiveness. (Doc. #93). Accordingly, the Court directed the government to submit a response to these new arguments. (Doc. #94). The government did so (Doc. #95), and Williams subsequently submitted another reply in support of his motion. (Doc. #96).

## DISCUSSION

The government contends Williams's motion is meritless because he did not receive constitutionally ineffective assistance of counsel.

The Court agrees.

I. Legal Standard

To prevail under the familiar standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), Williams must (i) demonstrate that his attorney's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," id. at 688, 690, and (ii) affirmatively prove actual prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,." id. at 694, not merely that an error "had some conceivable effect on the outcome." Id. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. Indeed, the Court will not second-guess strategic or tactical decisions made by counsel. This is because there are many ways to provide effective assistance in a given case. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any

one technique or approach." Harrington v. Richter, 592 U.S. 86, 106 (2011) (quoting Strickland v. Washington, 466 U.S. at 689).

## II. Analysis

Fairly construed, Williams's motion asserts a dozen claims of ineffective assistance of counsel. For the reasons detailed below, based on the record before the Court and the Court's familiarity with the underlying criminal proceedings, the Court concludes Williams's ineffective assistance of counsel claims are all without merit.

### A. Claims Contradicted by the Record

For the most part, Williams's claims are plainly contradicted by the record at trial and thus do not satisfy Williams's burden under Strickland.

First, Williams argues counsel failed to argue the confidential informant planted the drugs and guns seized from the Brooklyn Nets bag in order to obtain sentencing consideration. (Doc. #87 at ECF 5). But counsel advanced this argument extensively throughout trial, including during closing argument. (Doc. #67 at Tr. 734–42). There is thus no truth to Williams's claim that counsel failed to advance this argument.[5]

Second, Williams argues counsel failed to present evidence that the Middletown Police Department and the government withheld from the Court information regarding the confidential informant's involvement. (Doc. #87 at ECF 5–6). Williams does not explain what evidence counsel should have introduced, and there is no support in the record for Williams's claim that

---

[5] To the extent Williams challenges counsel's alleged failure to object to the government's "implication" of the existence of a friendship between Williams and the confidential informant (Doc. #87 at ECF 5), Williams does not indicate where in the record he believes the government made this implication. And even if he had, Williams does not articulate any prejudice resulting from this alleged error. Even in light of Williams's pro se status, this argument, which is "vague, conclusory, and unsupported by citation to the record," cannot support his ineffective assistance of counsel claim. Barnes v. United States, 2015 WL 5854030, at *7 (S.D.N.Y. Aug. 31, 2015).

the government withheld information from the Court. Indeed, as the government notes, the government's disclosure of the confidential informant's involvement formed the basis for counsel's motion to suppress the evidence seized from the Brooklyn Nets bag. (Docs. ##39; 42).

Third, Williams argues counsel failed to utilize exculpatory evidence included in government exhibits ("GX") 329 and 329T. (Docs. ##87 at ECF 6; 93 at 9–12; 96 at ECF 4). GX 329 was the recording of an Orange County Jail call between Williams and Rogers, and GX 329T was the transcript of that recorded call. (Doc. #95-2). According to Williams, counsel failed to object to the government's omission of a portion of these exhibits which would have demonstrated Williams did not intend to sell the drugs. Williams's argument is again contradicted by the record. The portions of the exhibits which Williams claims contained exculpatory evidence were not—as Williams alleges—omitted. (Id.). And counsel highlighted these exhibits when arguing, as Williams does now, that these exhibits undercut any inference of Williams's intent to distribute. (Doc. #64 at 2–3). In any event, GX 329 and GX 329T were not exculpatory, but rather supported the government's theory that Williams wanted to distribute the contents of the Brooklyn Nets bag after his release from prison. (Doc. #77 at 2–3).

Fourth, Williams argues counsel failed to renew his Rule 29 motion after closing argument. (Docs. ##87 at ECF 9; 96 at ECF 4). Again, this is simply not true. Counsel moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(a) during trial, and then renewed that motion pursuant to Fed. R. Crim. P. 29(c) after trial. (Doc. #64). And, contrary to Williams's claim, counsel's renewed motion did challenge the sufficiency of the evidence that Williams conspired to distribute the drugs. (Id. at 1–3). The Court simply rejected this argument when denying the renewed motion. (Doc. #77).

Fifth, Williams argues counsel failed to object to improperly admitted evidence of

Williams's prior drug-related activity. (Docs. ##93 at 3–5; 96 at ECF 3). Specifically, Williams claims counsel failed to object to "evidence suggesting that Williams had previously engaged in drug-related activity before the conduct charged in the indictment." (Doc. #93 at 3). Not so. The government filed a motion in limine to introduce this evidence at trial, and Williams's counsel filed a memorandum of law in opposition to the government's motion. (Docs. ##38; 50). Indeed, counsel raised the precise argument Williams claims he should have—that the government's evidence was inadmissible under Fed. R. Evid. 404(b) because it invited the jury to impermissibly view Williams as having a propensity to commit the charged drug offenses. (Doc. #50 at 3–4). In any event, as the Court explained on the record at the January 25, 2022, final pretrial conference, the admitted evidence did not run afoul of Rule 404(b).[6] (Doc. #95-1 at Tr. 10–12). The Second Circuit affirmed this Court's decision on appeal. United States v. Williams, 2024 WL 358134, at *2 ("[T]he challenged evidence was permissibly admitted as direct evidence to complete the story of the crime on trial . . . and provide background of the conspiracy charged.").

Sixth, Williams argues counsel failed to challenge "weak" evidence with respect to the Section 924(c) charge. (Doc. #93 at 15–18). Specifically, Williams contends counsel should have challenged the government's failure to establish (i) Williams "actively used or carried a firearm during the alleged drug trafficking crime," (ii) Williams "possessed" a firearm in

---

[6] Although the Court admitted evidence of Williams's crack sales to an undercover officer in 2018, as well as evidence of Williams's possession of crack and $11,000 at the time of his arrest, the Court also ruled, consistent with defense counsel's argument, that the government could not introduce evidence of Williams's crack sales to the confidential informant because the evidence in question was destroyed before it could be subjected to lab testing. (Docs. ##50 at 2–3; 95-1 at Tr. 9–10).

furtherance of the drug trafficking, and (iii) the existence of a drug trafficking offense.[7] (Id. at 15–17). Contrary to Williams's assertions, counsel challenged the government's evidence on all of these issues both during trial and by post-trial motion. (Docs. ##64 at 3–4; 67 at Tr. 750, 752–54; 71 at 2–3). And, again, the Court notes the Second Circuit found there was sufficient evidence supporting Williams's drug conspiracy and Section 924(c) convictions. United States v. Williams, 2024 WL 358134, at *1.

In short, the record flatly contradicts every one of Williams's arguments addressed above. Accordingly, none of these claims suffices to demonstrate ineffective assistance of counsel under the standard set forth in Strickland. See Ramos-Nunez v. United States, 2019 WL 130081, at *7 (S.D.N.Y. Mar. 21, 2019) (rejecting ineffective assistance of counsel claim where allegations were "contradicted by the record evidence").

B. Remaining Claims

For the reasons detailed below, Williams's remaining claims similarly fail to demonstrate counsel's performance fell below an objective standard of reasonableness, and, in any event, Williams suffered no prejudice.

1. Counsel's "Verbal Performance"

Williams argues counsel's "verbal performance" was so "incompetent" throughout the proceedings as to render counsel's assistance constitutionally deficient. (Docs. ##87 at ECF 4–5, 7–8; 96 at ECF 4).

Having presided over this case, the Court can say with absolute confidence that Mr.

7 Williams also asserts in passing that the evidence on the Section 924(c) count was insufficient because of inconsistent or inconclusive DNA evidence. (Doc. #87 at ECF 7). Williams does not allege counsel was ineffective for failing to challenge this evidence, and the Court notes counsel thoroughly cross-examined the government's forensic expert on this issue.

Green acted as a skilled advocate on Williams's behalf. The Court also knows Mr. Green to be an experienced and highly competent federal criminal defense attorney. There is no merit to Williams's assertion that Mr. Green's oral advocacy amounted to incompetence under "prevailing professional norms." Strickland v. Washington, 466 U.S. at 690.

To the extent Williams argues the Court tacitly acknowledged Mr. Green's incompetence by intervening during Mr. Green's cross-examination of Blessing Rogers, this argument is plainly wrong. The Court's decision to ask clarifying questions of Rogers during counsel's cross-examination was a proper exercise of the Court's discretion, and in no way validates Williams's claim of ineffective assistance. See Fed. R. Evid. 614(b); United States v. Filani, 74 F.3d 378, 385 (2d Cir. 1996). Similarly, counsel was not ineffective for failing to object to the Court's questions to Rogers. See Fields v. N.Y.S.D.O.C.C.S., 2023 WL 6292479, at *9 (E.D.N.Y. Sep. 27, 2023) ("[C]ounsel's decision not to object to questions posed by the trial court—especially where those questions merely clarified admissible and relevant testimony—does not fall below an objective standard of reasonable performance.").

2. Constructive Amendment of the Indictment

Williams next argues counsel improperly "allowed the government to constructively amend the indictment." (Doc. #93 at 12–15).

Constructive amendment of the indictment occurs when "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that defendant may have been convicted of an offense other than that charged in the indictment." United States v. D'Amelio, 683 F.3d 412, 416 (2d Cir. 2012).

Here, according to Williams, he was charged with participating in a narcotics conspiracy

from on or about May 25, 2018, through on or about May 30, 2018, but the government constructively amended the indictment by introducing evidence that Williams stored drugs for distribution after his release from prison and thus outside the charged timeframe. (Doc. #93 at 12–15).

Williams's argument is meritless. "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. . . . It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues." Salinas v. United States, 522 U.S. 52, 65 (1997). In other words, what matters is not when the planned crime would have taken place, but when the unlawful agreement to commit that crime occurred. Thus, the government did not constructively amend the indictment when it introduced evidence that, between May 25 and May 30, 2018, Williams conspired to distribute and possess with intent to distribute 28 grams or more of crack cocaine. Counsel was not ineffective for failing to make this meritless argument. See Weingarten v. United States, 865 F.3d 48, 53 (2d Cir. 2017).

3. Failure to Present Evidence Consistent with Personal Use

Williams also argues counsel was ineffective for failing to present evidence showing Williams possessed the drugs for his own personal use, rather than for distribution. (Doc. #93 at 6–9). Specifically, Williams claims counsel should have highlighted the absence of evidence commonly used to show intent to distribute, such as customer lists, packaging materials, observed sales, and use of multiple cell phones. (Id.). Even assuming counsel erred in failing to advance these arguments—an assumption which is at best speculative—in light of the ample evidence that Williams did, in fact, intend to distribute the drugs, the Court finds Williams has

not met his burden of demonstrating a "reasonable probability" that the result of the proceedings "would have been different absent counsel's alleged inadequacies." Salim v. United States, 2015 WL 10792047, at *3 (S.D.N.Y. Aug. 27, 2015).

Relatedly, Williams argues counsel "failed to call witnesses" who "could have contradicted the government's narrative." (Doc. #93 at 7–8). Williams does not explain the specific testimony those witnesses would have offered. (Id.). In any event, the decision to call or not call certain witnesses is a "virtually unchallengeable" tactical decision left to the judgment of trial counsel, Strickland v. Washington, 466 U.S. at 690–91, and Williams has provided no reason to second-guess counsel's decision here.

4. Jury Instructions

Williams also argues counsel was ineffective for failing to object to (i) the jury instruction on the Section 924(c) charge (Doc. #87 at ECF 6–7), and (ii) the limiting instruction regarding evidence of Williams's prior drug-related activity (Doc. #93 at 5–6).

"An attorney's failure to object to a jury instruction 'constitutes unreasonably deficient performance only when the trial court's instruction contained clear and previously identified errors.'" Johnson v. United States, 2018 WL 4625799, at *5 (S.D.N.Y. Sep. 26, 2018) (quoting Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001)).

With respect to the jury instruction on the Section 924(c) charge, Williams argues this instruction improperly enabled the jury to convict him even if he did not actually possess the firearms. (Doc. #87 at ECF 6–7). Williams's argument is meritless. The Court's instruction explained, correctly, that the jury could find Williams "possessed" the firearm if "he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the firearm, which is called constructive possession." (Doc.

#67 at Tr. 812–13); see also United States v. Willis, 14 F.4th 170, 181 (2d Cir. 2021) ("Constructive possession exists when a person has the power and intention to exercise dominion and control over the contraband in question."). Because the Court's instruction was correct, counsel was not ineffective for failing to object to it.

With respect to the limiting instruction regarding evidence of Williams's prior drug-related activity, Williams argues this instruction improperly "authorized the jury to use alleged prior drug activity to determine guilt." (Doc. #93 at 5–6). The Court notes that, as discussed above, counsel objected to the introduction of this evidence. And although the Court overruled counsel's objection, it was that objection which prompted this limiting instruction. In any event, the limiting instruction was not erroneous. As the Second Circuit noted in affirming Williams's conviction, this instruction "mitigated any risk of unfair prejudice by instructing the jury that it could consider the evidence only for the limited purpose of interpreting Williams's calls from jail." United States v. Williams, 2024 WL 358134, at *2. Thus, counsel's failure to object did not constitute ineffective assistance.

5. Cumulative Error

Williams also claims the cumulative effect of counsel's alleged errors "destroyed the reliability of the proceeding." (Doc. #93 at ECF 18). The Court is not persuaded. For all the reasons detailed above, the Court finds "the record in this case does not reveal the existence of errors, either individually or taken together, so prejudicial that they rendered petitioner's trial [] fundamentally unfair." Cromwell v. Smith, 2014 WL 1280287, at *13 (S.D.N.Y. Mar. 25, 2014). Indeed, Williams has not shown counsel made any errors whatsoever.

C. Williams Is Not Entitled to an Evidentiary Hearing

Finally, as to all of Williams's various claims, there is no reason to hold any further

hearing in this case. In light of this Court's intimate familiarity with the underlying criminal proceedings, the fact that Williams's assertions are contradicted by the trial record, and because there are no disputed issues of material fact, no purpose would be served by adding to the combined submissions on the Section 2255 motion or by otherwise expanding the record. Chang v. United States, 250 F.3d 79, 85–86 (2d Cir. 2001); Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011).

**CONCLUSION**

Petitioner James Williams's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

As Williams has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to close case no. 25-cv-9365 (VB).

The Clerk is further instructed to mail a copy of this opinion and order to petitioner James Williams at the address on the docket in case no. 25-cv-9365 (VB).

Dated: September 8, 2026
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge